UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| BOBBY BROWN, | ) | |
| Institutional ID No. 1124005, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 5:10-CV-181-BG |
| JOSEPH WILSON, | ) | ECF |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

*Pro se* Plaintiff Bobby Brown, a prisoner incarcerated by the Texas Department of Criminal Justice (TDCJ), paid the filing fee and filed this action claiming that Defendants, employees at the John T. Montford Unit (Montford Unit), violated his civil rights.[1] Brown testified at a hearing held pursuant to *Spears v. McCotter*, 766 F.2d 179, 181–82 (5th Cir. 1985), and thereafter filed a supplemental complaint. The undersigned ordered Brown to submit answers to a Questionnaire, and Brown did so.

Brown has identified the Defendants as follows: Patrick Hunter, a supervisor at the prison's law library; Alfred Benson, a food service manager at the prison; A. Gonzales and Jody Potts, officers at the prison; Cody Parker, a captain at the prison; Joseph Wilson, the warden; Joe Milbern and Cheryl Lawson, assistant regional directors; Ms. Torres, a nurse at the prison; Robert Villalpando, J. Garcia, and Billie Luna, officers who work in the transportation department; and Ray Perez, S. Perez, and Joel Subia, officers at the prison.

---

[1] Brown has since transferred to the W.J. Estelle Unit in Huntsville, Texas.

After conducting preliminary screening as required under 28 U.S.C. § 1915A, the undersigned determined that Brown had stated claims sufficient to require an answer or other responsive pleading from the Defendants. Defendants filed Answers to Brown's Complaint. Notwithstanding the fact that Defendants filed Answers, the undersigned recommends that this action be dismissed.

## I. Standards of Review

The court is required to screen a complaint brought by a prisoner against a governmental entity or governmental employee if it is determined that the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1)–(2) (2012); *see also* 42 U.S.C. § 1997e(c)(1) (requiring the court to dismiss on its own motion or the motion of a party a suit brought by a prisoner with respect to prison conditions on the same grounds). The court may *sua sponte* dismiss a prisoner's suit against state agencies and officer even if the plaintiff paid the filing fee. *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998).

## II. The Claims in Brown's Original Complaint

*Claims Against Defendant Hunter*

Brown claims that, per TDCJ policy, he was "guaranteed a minimum of ten hours per week" in the prison library. (Pl.'s Compl. 10.) He claims that Defendant Hunter, the supervisor of the law library, refused to allow him to go to the library during the time he was incarcerated at the Montford Unit and that his appeal in *Brown v. Quarterman*, No. 07–11213, has consequently "been stuck" in the Court of Appeals for the Fifth Circuit. (Pl.'s Compl. 10.)

2

Prisoners have a fundamental constitutional right to access the courts, and prison officials must ensure this right by providing prisoners with adequate law libraries or adequate legal assistance from persons trained in the law. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S. Ct. 1491, 52 L. Ed. 2d 72 (1977). Prisons must provide tools that will allow prisoners to attack their sentences, either directly or collaterally, and to challenge the conditions of their confinement. *Lewis v. Casey*, 518 U.S. 343, 355, 116 S. Ct. 2174, 135 L. Ed. 2d 606 (1996). The right of access to the courts, however, guarantees no particular methodology but rather the conferral of the capability of bringing legal actions that challenge sentences or conditions of confinement. *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (citing *Lewis*, 518 U.S. at 354). "[P]rison law libraries and legal assistance programs are not ends in themselves, but only the means for ensuring a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (internal quotations omitted).

Although Brown claimed at the hearing that he needed to be physically present in the law library to conduct his research, he also testified that he was provided access to legal materials; he testified that items from the law library were delivered to him when he requested them. He was therefore provided the means to pursue his legal claims.

In addition and in the alternative, Brown has failed to show that he suffered prejudice in any legal action pending before a court. *See id.* (holding that a prisoner claiming a violation of his right to access the courts must show that the alleged shortcomings hindered his efforts to pursue a legal claim.) Although Brown claimed that his appeal in *Brown v. Quarterman* was hindered because he was not allowed to physically access the law library, the docket sheet from the court belies his claim. According to the docket sheet, Brown filed his appeal on November 27, 2008, and thereafter filed

3

motions in the appeal that were addressed by the court. Although Brown's motion for a certificate of appealability was ultimately denied, it was not denied on grounds that Brown failed to meet a deadline or otherwise failed to meet a procedural requirement.

### *Claims Against Defendant Benson*

Brown claims he is a Muslim and that Defendant Benson, the food service manager, "refused to make sure" that he was provided with appropriate meals during Ramadan and other Muslim holidays. Brown claims that he was given sack lunches with peanut butter sandwiches and bean burritos instead of the Ramadan and holiday meals other Muslim inmates were given. He claims Benson's actions constituted a breach of prison policy as well as discrimination.

Brown's claim that Benson's actions violated policy is insufficient to state a constitutional claim. A prison official's failure to follow the prison's own policies does not, itself, result in a constitutional violation. *Samford v. Dretke*, 562 F.3d 674, 681 (5th Cir. 2009); *Edwards v. Johnson*, 209 F.3d 772, 779 (5th Cir. 2000).

To the extent Brown claims Benson's actions violated the Equal Protection Clause, his claim is frivolous. The Equal Protection Clause of the Fourteenth Amendment requires states to treat "all persons similarly situated alike." *Vera v. Tue*, 73 F.3d 604, 609 (5th Cir. 1996). A plaintiff bringing a Fourteenth Amendment claim must allege that the defendant singled out a particular group for disparate treatment and acted for the purpose of causing an adverse effect on the group. *Laverna v. Lynaugh*, 845 F.2d 483, 496 (5th Cir. 1988). Brown has not alleged that Benson singled out a particular group for disparate treatment or that his actions caused an adverse effect on a particular group; to the contrary, he alleges that Benson's actions impacted only him. He claims that other Muslim inmates were given proper meals during Ramadan and Muslim holidays and that he was the only Muslim inmate who was not given the proper meals.

To the extent Brown claims Defendant Benson's actions constituted an Eighth Amendment violation, he has failed to state a claim. Brown has not alleged that the sandwiches were nutritionally inadequate, that he lost weight during the time period at issue, or that he suffered any adverse physical effects or risks to his health. Although Brown claims he could not eat the peanut butter sandwiches and bean burritos because he is a dialysis patient, he has failed to explain why he could not eat them. Research on the subject does not reveal dietary restrictions that would preclude a dialysis patient from eating peanut butter sandwiches or bean burritos, and "[m]ere distaste does not represent a constitutionally cognizable complaint." *See Gabel v. Estelle*, 677 F. Supp. 514, 515 (S.D. Tex. 1987) (dismissing prisoners' claims that they were fed only peanut butter sandwiches during a lock down).

### *Claims Against Defendant Gonzales*

Brown claims Defendant Gonzales "discriminated against [him] when he sexually assaulted [him.]" (Pl.'s Compl. 11.) Brown specifically claims Gonzales grabbed his buttocks and whispered sexual remarks to him. He testified that a similar incident occurred on another date but did not provide specific details regarding the second incident.

It has been acknowledged that "because the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the unnecessary and wanton infliction of pain forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (citations and internal quotations omitted). However, isolated incidents of sexual harassment and touching are not sufficiently serious enough to constitute an Eighth Amendment claim. *Boddie v. Schneider*, 105 F.3d 857, 861 (2d Cir. 1997).

5

In *Boddie*, a case with facts analogous to those in this case, the prisoner alleged that a correctional officer made a statement that he believed to be "a pass" and the next day squeezed his hand, touched his penis, and made a sexually suggestive remark. *Id*. at 859–60. The prisoner claimed that two weeks later the correctional officer bumped into his chest with her breasts, pinned him to a door, and pressed her entire body against him. *Id*.

The court applied the test from *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 129 L. Ed. 2d 811 (1994), and acknowledged that the isolated incidents of harassment and touching without the prisoner's consent were "despicable" but found that they were not singularly or cumulatively egregious in the harm they inflicted and did not, therefore, rise to the level of a constitutional claim. *Boddie*, 105 F.3d at 861.

Like the plaintiff in *Boddie*, Brown has alleged incidents of sexually suggestive language and sexual touching by a correctional officer. Like the incidents alleged in *Boddie*, the incidents in this case can and should be characterized as "despicable"; yet, like the incidents alleged in *Boddie*, the incidents alleged in this case consisted of isolated actions that did not result in serious harm objectively sufficient enough to state a constitutional claim.

### *Claims Against Defendant Potts*

Brown complains that Defendant Potts refused to do anything about Gonzales's conduct. Brown's claim should be dismissed because § 1983 does not provide a basis for a cause of action against supervisory officials based on the conduct of subordinates. *See Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983) ("Personal involvement is an essential element of a civil rights cause of action.").

Brown also complains of retaliation. He testified that Potts harassed him for months after learning that he filed grievances against him and Gonzales. He claims Potts beat on his cell door

and left a bright light shining in his cell at night and claims the harassment deprived him of sleep and constituted cruel and unusual punishment.

In order to establish an Eighth Amendment violation based on conditions of confinement, the prisoner must make two showings. The first showing involves an objective inquiry requiring that the conditions of confinement be objectively "so serious as to deprive [the inmate] of the minimal measure of life's necessities." *Harper v. Showers*, 174 F.3d 716, 720 (5th Cir. 1998). The second showing involves a subjective inquiry requiring the plaintiff to show that the responsible prison official acted with deliberate indifference to the conditions at issue. *Davis v. Scott*, 157 F.3d 1003, 1006 (5th Cir. 1998).

Sleep "counts as one of life's basic needs"; thus, conditions that are designed to prevent an inmate from sleeping may violate the Eighth Amendment. *Harper*, 174 F.2d at 720. However, nothing in Brown's allegations demonstrates that he was subjected to conditions that were serious enough to deprive him of the minimal measures of life's necessities. Brown has not alleged that he was subjected to twenty-four hour illumination in his cell or that he suffered adverse physical or psychological effects as a result of Potts's harassment. *Cf. Kennan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996) (prisoner was subjected to constant illumination with no way of telling night from day and suffered mental and psychological problems as a result); *King v. Frank*, 328 F. Supp. 2d 940, 946 (W.D. Wis. 2004) (prisoner suffered headaches, sore eyes, and blurry vision as a result of twenty-four hour illumination in his cell).

Although this court does not condone the harassment Brown alleges, such actions do not rise to the level of cruel and unusual punishment proscribed by the Eighth Amendment. Brown has not alleged that he suffered sleep deprivation as a result of the lighting; that he was not allowed to cover

7

his eyes with a towel or an article of clothing while the overhead lighting was on; or that he suffered headaches, blurry vision, or mental and psychological problems as a result of Potts's actions. The Eighth Amendment's prohibition against cruel and unusual punishment protects prisoners from conditions of confinement that constitute threats to health but not against those that cause mere discomfort or inconvenience. *Wilson v. Lynaugh*, 878 F.2d 846, 849 (5th Cir. 1989). Discomfort without more does not violate the Eighth Amendment. *See, e.g., Woods v. Edwards*, 51 F.3d 577, 581 (5th Cir. 1995). Brown's allegations do not demonstrate cruel and unusual punishment.

Finally, the retaliation Brown alleges does not implicate constitutional protections. "Some acts, though maybe motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights . . . such acts do not rise to the level of constitutional violations . . .." *Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006). Brown's allegation that Potts banged on his cell door and left a light shining in his cell during nights for a finite period of time is an allegation of *de minimis* actions.

### *Claims Against Defendants Potts and Parker*

Brown claims that Defendant Potts asked officers to write false disciplinary cases against him for the purpose of affecting his line class, custody level, and parole date. He claims that Defendants Potts and Parker are friends and that Parker made sure that he conducted the hearings for the cases that were filed against Brown and that he discriminated against Brown by taking away his good time credits and changing his line class status.

Brown testified at the *Spears* hearing that hearings were held for the cases. In addition, he testified that he appealed the cases and that they were upheld on appeal. Brown's claims are not cognizable under § 1983 because he has not demonstrated that the findings from the disciplinary

cases were overturned or otherwise invalidated.  *See Edwards v. Balisok*, 520 U.S. 641, 648, 117 S. Ct. 1584, 137 L. Ed. 2d 906 (1997) (applying the holding in *Heck v. Humphrey*, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d 383 (1994), to determinations in prison disciplinary proceedings).

>*Claims Against Defendants Wilson, Milbern, and Lawson*

Brown claims that, as the warden of the prison, Defendant Wilson is responsible for the orderly management of the unit.  He claims that Wilson allows officers at the prison to "violate the rules, etc." (Pl.'s Compl. 12.)  He claims that he appealed to Wilson for help and that Wilson refused to help him and "sided" with Defendants Hunter, Benson, Gonzales, and Potts.  *Id*.  Brown claims that he also appealed to Defendants Milbern and Lawson for help and that they refused to help him and sided with Wilson.

Section 1983 does not provide a basis for a cause of action against supervisory officials based on the conduct of subordinates.  *See Thompson*, 709 F.2d at 382 ("Personal involvement is an essential element of a civil rights cause of action.").  Liability cannot be imposed on a defendant based on a theory of respondeat superior.  *Thompkins v. Belt*, 828 F.2d 298, 303–04 (5th Cir. 1987). In a case with allegations such as those Brown has asserted, liability may be imposed upon the supervisor only if (1) he failed to train or supervise the officers involved in the alleged constitutional violation; (2) there is a causal connection between the supervisor's wrongful conduct and the constitutional violation; (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights.  *Id*. at 304.  Brown's claim fails because  he has not alleged the foregoing.  Significantly, he has failed to show the violation of a constitutional right.

9

*Claims Regarding Recreation*

In his prayer for relief Brown asks for injunctive relief in the form of an order requiring Defendants to stop denying him his right to "go outside to recreate or inside [to] recreate in the gym . . . ." (Pl.'s Compl. 15.)

Brown is no longer incarcerated at the Montford Unit; he filed a notice in which he advised the court that he is now incarcerated at the W.J. Estelle Unit in Huntsville, Texas. Because Brown is no longer incarcerated at the Montford Unit, he cannot show a likelihood that he will be subjected to future harm by Defendants' alleged actions regarding recreation. Accordingly, his request for injunctive relief must be denied as moot. *See Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005); *see also Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002) ("The transfer of a prisoner out of an institution often will render his claims for injunctive relief moot.")

### III.   Claims in Brown's Supplemental Complaint

*Claims Against Defendants Villalpando, Perez, and Torres*

Brown claims Defendants Villalpando and Ray Perez sent a memorandum to officers at the prison instructing them to place him in full restraints when he went to the dialysis clinic, feed him in his cell, and not allow him to attend religious services. Brown claims he lost twenty-six pounds and suffered from physical problems as a result. Brown asserts that Defendant Villalpando wrote the memorandum in order to discriminate against him and because Brown wrote a grievance about Defendant Torres, Villalpando's girlfriend. Brown claims that Defendant Torres is the senior nurse for the dialysis center at the prison and that she violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Eighth Amendment because she refused to give him treatment a doctor ordered and made him leave the dialysis clinic.

10

Brown's complaint that he was shackled does not implicate the Eighth Amendment's proscription against cruel and unusual punishment. The Eighth Amendment prohibits punishments that involve the unnecessary and wanton infliction of pain. *Gregg v. Georgia*, 428 U.S. 153, 173, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976). Thus, the use of restraining devices cannot be considered cruel and unusual punishment unless used to cause "great discomfort." *Jackson v. Cain*, 864 F.2d 1235, 1243 (5th Cir. 1989). In *Jackson*, the prisoner claimed he was handcuffed, shackled, and binded with a steel chain belt that caused pain and permanent injury to his wrist. The Court of Appeals for the Fifth Circuit rejected the prisoner's claim of cruel and unusual punishment, noting that the prisoner had not alleged that "great pain was caused deliberately by the officers." *Id*. at 1244. In this case, Brown has not alleged actions as egregious as those alleged in *Jackson*. Further, he has not alleged that Villalpando or any other defendants deliberately caused him to suffer pain or that he suffered an injury as a result of the shackling.

Brown's claim that he was fed in his cell does not implicate constitutional concerns because he has failed to identify a basic human need that was not met as a result of eating in his cell. *See Harper*, 174 F.3d at 730 (acknowledging that the prisoner must allege the denial of a basic human need). His claim that he was not allowed to attend religious services is conclusory and without foundation and should be dismissed. Brown's claims that Villalpando wrote the memorandum for the purpose of retaliating against him is without merit. To state a valid claim of retaliation, a prisoner must point to a specific constitutional right that has been violated. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Brown's retaliation claim fails because the retaliatory actions he alleges on the part of Villalpando and Perez did not violate a constitutional right.

11

Brown's claim that Nurse Torres prevented or refused to allow him to undergo dialysis is without merit. He stated in his answers to the Questionnaire that Nurse Torres made him leave the dialysis clinic because he refused to allow a trainee to connect the dialysis machine to the graft in his arm. (Pl.'s An. 2.) He claimed that, when he refused to allow the trainee, a nurse, or technician to facilitate his dialysis, Nurse Torres became angry and told him to leave the clinic. He alternatively claimed at the *Spears* hearing that he did not undergo dialysis because officers required that he walk to the dialysis clinic in shackles: he said he did not want to be "shackled like a dog" while other dialysis patients were only cuffed.

Brown's allegations do not demonstrate that Nurse Torres engaged in a constitutional violation or any other illegal action. Whether Brown was asked to leave the clinic, as he stated in his answers to the Questionnaire, or refused to walk in shackles to the dialysis clinic, as he testified, it was Brown's actions that resulted in him not undergoing dialysis. It was Brown's decision to refuse to allow the trainee, nurse, or technician to facilitate dialysis, and it was his decision to refuse to walk in shackles to the dialysis clinic. If Brown did, in fact, lose weight as a result of not undergoing dialysis, the blame lies with him rather than with Defendants.

### *Claims Against Defendants Garcia and Luna*

Brown claims Defendants Garcia and Luna brought a false disciplinary case against him on January 5, 2011. He claims in his answers to the Questionnaire that he was charged with creating a disturbance on January 5, 2011, found guilty of the charge, and punished with the loss of thirty days recreation and commissary privileges and that, as a result of the charge, his parole date was "pushed back." He claims he was denied due process of law and suffered cruel and unusual punishment as a result of the punishment.

12

Disciplinary procedures comport with procedural due process requirements if the prisoner is provided: (1) advance written notice to the prisoner of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the fact-finder of the evidence relied on and the reasons for the disciplinary action. *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (citation omitted). Brown acknowledged in his answers to the Questionnaire that he was provided advance notice of the charge and the hearing date, that he was present at the hearing, and that he was given an opportunity to call witnesses and present evidence. Brown was accorded the due process guaranteed to him. In regard to Brown's claim that his parole date was changed, early release on parole in Texas is discretionary; there is no constitutional expectancy or right to parole. *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997) (citation omitted). Because the State of Texas has not created a liberty interest in early release on parole, the loss of good-time credits does not implicate due process concerns. *Id*. at 768–79. Finally, the temporary loss of recreation and commissary privileges represents a change in the conditions of confinement which does not represent an atypical and significant deprivation that would impinge on a state-created liberty interest; the temporary loss of privileges does not, therefore, implicate due process concerns. *Id*. at 768. Further, the loss of the privilege to purchase items in the commissary and recreate for the thirty day period does not rise to the level of cruel and unusual punishment. The Constitution does not mandate an absolute right to daily outdoor recreation. *See, e.g.*, *Green v. Belton,* 801 F.2d 765, 771–72 (5th Cir. 1986). Nor does the Constitution mandate a right to buy food from a prison commissary. "The Constitution requires only that prisoners be furnished reasonably adequate food." *Jones v. Diamond*, 594 F.2d 997, 1014 (5th Cir. 1979) (citations omitted).

*Claims Against Defendants S. Perez and Subia*

Brown claims Defendants S. Perez and Subia retaliated against him by writing a false disciplinary case on January 10, 2011, and that they did so because they are friends with Nurse Torres. Brown has not alleged that S. Perez and Subia retaliated against him for exercising a constitutional right. His claim should therefore be dismissed. *McDonald v. Steward*, 132 F.3d 225, 231 (5th Cir. 1998) (holding that one of the factors the plaintiff must show is intent to retaliate against the prisoner for exercising a constitutional right). In addition and in the alternative, Brown has not shown that the disciplinary case was overturned or otherwise invalidated. *See Edwards*, 520 U.S. at 648 (applying the holding in *Heck*, 512 U.S. at 487, to determinations in prison disciplinary proceedings).

## IV. **Recommendation**

Based on the foregoing discussion, the undersigned recommends that the District Court dismiss Brown's Complaint and all claims therein against all Defendants. The undersigned further recommends that any pending motions be denied as moot.

## V. **Right to Object**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which the objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing

14

Case 5:10-cv-00181-C   Document 96   Filed 04/30/12   Page 15 of 15   PageID 426

before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    Dated:     April 30, 2012.

*[signature]*
NANCY M. KOENIG
United States Magistrate Judge